WINDSOR UNIVERSITY, Appellant,

v.

SECRETARY OF HEALTH, EDUCA-
TION, AND WELFARE, Joseph A. Cali-
fano, and Commissioner of Education, T.
H. Bell, Appellees.

No. 75–2090.

United States Court of Appeals,
Ninth Circuit.

March 29, 1977.

John J. Guerin, argued, George L. Rogers,
Huntington Beach, Cal., for appellant.

Carolyn M. Reynolds, Asst. U. S. Atty.,
argued, Los Angeles, Cal., for appellee.

Before CLARK,* Justice of the Supreme
Court, and CHAMBERS and HUFSTED-
LER, Circuit Judges.

PER CURIAM:

This appeal involves the administration of
the Federal Insured Student Loan Program
["FISLP"], 20 U.S.C. § 1071 et seq. (1974)
["the Statute"]. Under the FISLP, the fed-
eral government insures tuition loans made
to students by eligible institutions of higher
education. Appellant, Windsor University
["Windsor"], is a liberal arts institution in
Los Angeles and serves primarily minority
students. In September 1973, Windsor ap-
plied to appellees, the Secretary of the De-
partment of Health, Education and Welfare
["the Secretary"] and the Commissioner of
Education ["the Commissioner"] for a Fed-
eral Loan Insurance Contract so that it
could offer financial assistance to its stu-
dents. In response, the Commissioner,
through the Office of Guaranteed Student

* The Honorable Tom C. Clark, United States Supreme Court, sitting by designation.

Loans, requested supplementary financial information with respect to an unpaid $229,500 tuition bill still due Windsor,[1] the qualifications of Windsor's administrators of the loan program and appellant's source of funding for loans to be made under the FISLP.

In April 1974, the Commissioner granted appellant's request for a loan insurance contract but limited the amount appellant could lend under the contract to $30,000 for the time period starting May 1, 1974 to October 31, 1974. The Commissioner, however, indicated that he would modify the dollar amount limitation upon proof of additional sources of capital from which to lend and that he would consider extending the lending time period upon receipt of a quarterly financial statement. Finally, the Commissioner warned that he would cancel the loan contract if appellant lost its provisional accreditation. Appellant signed the loan insurance contract in May 1974 which contract provided that the Commissioner would insure all loans made by Windsor "[w]ithin such limits as may be set by him."

Subsequent to signing the loan contract, Windsor submitted several financial statements with the hope of raising its lending limit to $1.5 million. The Commissioner denied this request because of Windsor's inexperience in administering a large loan program, its dependence on veteran student enrollment and the fact that encumbered real property worth $1.5 million constituted appellant's major financial resource. But in December 1974, the Commissioner increased appellant's lending limit to $200,000 for the time period starting December 1, 1974 to February 28, 1975. The Commissioner conditioned his approval upon Windsor's continued "accreditation candidate status" during the specified lending time period. Upon notification of the Commission-

er's action, appellant commenced the present suit.

In the lower court proceedings, appellant argued that 20 U.S.C. § 1071 *et seq.* (1974) did not authorize appellees' imposition of dollar and time limitations in appellant's Federal Loan Insurance Contract. Even if the Statute did authorize the imposition of these limitations, appellant further argued, appellees' application of these limitations to appellant's contract was arbitrary and an abuse of discretion. The district court found that appellees were authorized to impose lending limitations under the FISLP and that appellees had reasonably exercised their discretion in imposing these limitations in the present case. The district court therefore granted a motion for summary judgment in favor of appellees.

On appeal, appellant raises the same arguments it raised in the lower court and adds that it did not have a hearing below because it was constantly interrupted by an allegedly hostile district judge. We need not address appellant's claim that it was deprived of a hearing because we find that its substantive claims are without merit.

The Statute expressly authorizes appellees' imposition of time and dollar limitations in contracts made pursuant to the FISLP. Section 1082(a)(3) empowers the Commissioner to:

"include in any contract for Federal loan insurance such terms, conditions, and covenants relating to . . . such . . matters as the Commissioner determines to be necessary to assure that the purposes of this part will be achieved. . ."[2]

The FISLP enables students to obtain postsecondary education when their financial situations would not otherwise permit them to pursue further education. The success of

---

1. This outstanding tuition bill represents monies due Windsor from students who had obtained federally insured student loans from other eligible lenders.

2. Section 1082(a)(1) further provides that the Commissioner may prescribe "such regulations as may be necessary to carry out the purposes of this part[.]" (*Cf.* Section 1074(b) ("The

Commissioner may, if he finds it necessary to do so in order to assure an equitable distribution of the benefits of this part, assign, within the maximum amounts specified in subsection (a) of this section, Federal loan insurance quotas applicable to eligible lenders, or to States or areas, and may from time to time reassign unused portions of these quotas.").)

such a program is dependent upon private lenders' confidence in the guarantees that the federal government provides when it insures their loans to needy students. (*See* S.Rep. No. 673, 89th Cong. 1st Sess.; 1965 U.S. Code Cong. & Ad. News, pp. 4027, 4061 (". . . The success of any insured loan program must depend in great measure upon the good will and cooperation of the private lending institutions who will make the loans . . .. These loans are made at no profit to the lenders.").)

▇ The Commissioner is thus obligated to impose those conditions upon eligible lenders that would minimize the possibility of student defaults. Certainly Section 1082(a)(3)'s broad grant of discretion to the Commissioner contemplates his use of dollar and time limitations in a loan contract to protect the financial integrity and continued viability of the FISLP. This is especially true where the lending institution is inexperienced in administering a loan program that requires a complex collection mechanism. Indeed, the Commissioner is under a duty to insure that a lender under the FISLP "can satisfactorily demonstrate that the procedures it has established for making . . . loans . . . are in accordance with generally accepted commercial lending practices and that it is able to carry out the duties and responsibilities required of it under this part."[3] (45 C.F.R. § 177.1(h) (1976).)

▇ Nor did the Commissioner act arbitrarily in exercising the discretion given him by Section 1082(a)(3). Contrary to appellant's assertions, there is nothing unique about the limitations imposed by the Commissioner in Windsor's loan contract. Each application for a Federal Loan Insurance Contract is screened for approval by an Evaluation Committee which typically imposes dollar limitations upon novice lenders. Furthermore, Windsor's less than rosy financial picture also supports the Commis-

sioner's actions in the present case. Windsor already had an outstanding claim for over $200,000 in unpaid tuition under federally insured student loans from other lenders. Its financial resources as well as administrative experience were limited enough to mandate a cautious approach on the part of the Commissioner approving appellant's application. Additionally, appellant cannot argue that the Commissioner was inflexible in restricting Windsor's power to lend under the FISLP. The Commissioner gave Windsor ample opportunity to prove that its financial condition no longer required the imposition of any allegedly spartan lending limitations. And, in fact, the Commissioner modified his earlier restrictions by increasing the dollar amount and extending the time period over which appellant could lend under the FISLP. Under these circumstances, the district court correctly concluded that, as a matter of law, appellees did not act arbitrarily and that summary judgment in favor of appellees was appropriate.

AFFIRMED.

---

3. *Cf.* 45 C.F.R. § 177.66 (1976):
   "If the Commissioner determines that any of the following conditions exist, he may, . . . require reasonable . . . measures to alleviate such conditions as a requirement for an institution's initial . . . par-

ticipation in programs under this part: . . . (d) The institution's financial condition is such that it is unable . . . (3) to provide the administrative resources to comply with the requirements of this part."